UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RACHEL LUGO,

      Plaintiff,

v.                          CASE No. 8:13-CV-1772-T-TGW

CAROLYN W.COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____

 O R D E R

      The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

I.

      The plaintiff, who was thirty-eight years old at the time of the most recent administrative hearing and who has a high school education, has worked as an auto-body shop owner/operator, dry cleaning manager, and

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 17).

printer's shop assistant (Tr. 47, 174). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to nerve damage in the pelvic region and legs and a lower back injury (Tr. 173). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "chronic pain secondary to perineoplasty with nerve release (2004); status-post pelvic adhesions, and rectocele repair" (Tr. 28). He concluded that, with these impairments (Tr. 29):

> [T]he claimant retains the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift and carry 20# occasionally and 10# frequently. She can sit, stand and walk 6 hours in an 8 hour workday. She has no limitations in her ability to push-pull with hand or foot controls. She has no manipulative, visual, communicative, postural or environmental limitations. She can hear, understand, remember, and carryout [sic] simple routine and complex work instructions, and can interact appropriately with the general public, co-workers, and supervisors. She can adapt to changes in work instructions; and, can sustain concentration and attention to complete an 8 hour

workday and 5 day workweek.  She can be alert to
common hazards in the work place and avoid them.

The law judge determined that the plaintiff's restrictions prevented her from

performing past work (Tr. 36).  However, the law judge found that the

Medical-Vocational Rules directed a conclusion of not disabled (Tr. 36, 37).

Accordingly, the law judge ruled that the plaintiff was not disabled (Tr. 37).

The plaintiff sought review by, and submitted additional

evidence to, the Appeals Council (Tr. 4-7).  The additional evidence consisted

of treatment notes from her pain management physician, Dr. Josephina

Estampador-Tan, for the time period May 2010 to January 2012 (see Tr. 7,

Exs. 23F, 24F).  The Appeals Council considered the additional evidence, but

found that the "information does not provide a basis for changing the

Administrative Law Judge's decision" (Tr. 4, 5).  The Appeals Council

therefore let the decision of the law judge stand as the final decision of the

Commissioner (Tr. 4).

II.

A.  In order to be entitled to Social Security disability benefits

and supplemental security income, a claimant must be unable "to engage in

any substantial gainful activity by reason of any medically determinable

-3-

physical or mental impairment which ... has lasted or can be expected to last

for a continuous period of not less than twelve months." 42 U.S.C.

423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the

terms of the Social Security Act, is one "that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42

U.S.C. 423(d)(3), 1382c(a)(3)(D). In this case, the plaintiff must also show

that she became disabled before her insured status expired on December 31,

2005, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre

v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

There is not a similar requirement with respect to the plaintiff's claim for

supplemental security income payments, although a claimant may not receive

such payments for the time prior to the month following the filing of an

application for supplementary income.[2] 20 C.F.R. 416.335; Manzo v.

---

[2]In this case, the plaintiff could not receive disability benefits for a disability that begins after December 31, 2005 (Tr. 27), and could not receive supplemental security income payments for a period prior to the month following October 16, 2009, the date she filed her application (Tr. 147). Thus, impairment evidence from January 1, 2006, to November 1, 2009, is relevant only insofar as it sheds light on the plaintiff's condition before or after those dates.

Commissioner of Social Security, 408 Fed. Appx. 265, 267 n.2 (11th Cir.
2011).

A determination by the Commissioner that a claimant is not
disabled must be upheld if it is supported by substantial evidence. 42 U.S.C.
405(g). Substantial evidence is "such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." Richardson v. Perales,
402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305
U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact
made by administrative agencies ... may be reversed ... only when the record
compels a reversal; the mere fact that the record may support a contrary
conclusion is not enough to justify a reversal of the administrative findings."
Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert.
denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the
courts, to resolve conflicts in the evidence and to assess the credibility of the
witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is
the responsibility of the Commissioner to draw inferences from the evidence,
and those inferences are not to be overturned if they are supported by

substantial evidence.  <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. <u>See</u> 20 C.F.R. 404.1520, 416.920. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled.  20 C.F.R. 404.1520(b), 416.920(b). If not, the next inquiry (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c), 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities.  20 C.F.R. 404.1521(a),

416.921(a). If there is not a severe impairment, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f), 416.920(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 404.1520(g), 416.920(g). In such cases, the regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules, known as "guidelines" or "grids," that are appended to the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 2.

### III.

The plaintiff's stated grounds for challenging the decision are that the law judge: (1) erred in finding that her back impairment was not severe, (2) failed to give controlling weight to the opinion of her treating

physician, and (3) based his findings on opinions that did not consider the entire record (Doc. 24, p. 2).  None of these arguments is meritorious.

A. The plaintiff argues first that the law judge erred in finding that her back impairment was not severe (id., pp. 5, 7-8).  The law judge acknowledged the plaintiff's allegations of disability based on multiple impairments, and found some of them were severe, but he determined that the plaintiff's back pain was not a severe impairment (Tr. 28, 29).  In this regard, the law judge explained (Tr. 29):

> When considering the ... health issues of hypertension, high cholesterol, back pain, irritable bowel syndrome (IBS), and injuries from childbirth, the medical evidence indicates that these conditions are controlled by medication, have resolved, have not lasted for 12 months duration, and/or do not significantly limit the claimant's vocational ability to perform basic work-related activities.  Thus, the mental and physical health issues are "non-severe" as defined in the regulations. (20 CFR 404.1520a(d)(1), 404.1521, 416.920a(d)(1)), 416.921, and Brady v. Heckler, 724 F. 2d 914, 920 (11th Cir. 1984)) Notwithstanding, all associated limitations no matter how minimal, are considered throughout the decision.

The plaintiff argues that the law judge's explanation was insufficient because he did not specify which of those reasons was the basis

for finding the plaintiff's back impairment non-severe (Doc. 24, p. 7). However, the law judge's reasons for finding that the plaintiff's back impairment was not severe are specified throughout the decision (see Tr. 31-36). The plaintiff acknowledges that the law judge discussed the plaintiff's alleged back impairment in connection with his rejection of Dr. Estampador-Tan's opinion of disabling back impairments, but argues that explanation does not address whether the back impairment met the minimal threshold of "severe" (Doc. 24, p. 7).

However, the law judge stated that the plaintiff's treating pain management physician Dr. Estampador-Tan regularly documented in the treatment notes that the medications used in treating the plaintiff's back ailments "are effective without adverse or intolerable side effects" (Tr. 36; see, e.g., Tr. 460-64). Furthermore, the law judge's explanation that the plaintiff's clinical examination findings were grossly normal and the MRI showed only mild degenerative changes with slight circumferential disc bulges, in addition to the plaintiff's ability to do self and child care, shows that he found that her back impairment did not significantly limit her vocational ability to perform basic work-related activities (see Tr. 31-36).

The plaintiff contends that the law judge should have found that her back impairment was severe because the plaintiff testified to back pain which is exacerbated by activity and, therefore, her back impairment necessarily interferes with her ability to work (Doc. 24, pp. 7-8). Further, the plaintiff argues that Dr. Estampador-Tan's diagnoses of chronic intractable pain and low back syndrome, and her treatment for back pain, show that the back impairment was severe (id.).

Those circumstances did not compel the law judge to find that the plaintiff had a severe back impairment. See Adefemi v. Ashcroft, supra. Thus, the law judge did not find the plaintiff fully credible and the plaintiff cannot rely on discredited evidence to establish a severe impairment. Furthermore, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). Therefore, Dr. Estampador-Tan's diagnoses of chronic intractable pain and low back

syndrome do not, in themselves, mean that the back impairment is severe, especially considering the benign objective and clinical findings.

Regardless, any purported failure in identifying the plaintiff's back ailment as a distinct severe impairment is harmless because the law judge did not simply stop at step two of the sequential analysis as a result of a finding of a nonsevere impairment. Rather, based upon his finding of severe impairments of "chronic pain secondary to perineoplasty with nerve release (2004); status-post pelvic adhesions, and rectocele repair" (Tr. 28), he continued on in the sequential analysis and found that the plaintiff was limited to performing light work. Consequently, the plaintiff cannot prevail on this issue simply by showing that the law judge should have characterized her back ailment as a severe impairment.

Thus, the Eleventh Circuit has held that "step [two] acts as a filter; ... the finding of any severe impairment ... is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); see also Tuggerson-Brown v. Commissioner of Social Security, __ Fed. Appx. __; 2014 WL 3643790 at *2 (11th Cir.). Accordingly, "there is no need for an ALJ to identify every severe impairment at step two .... [because]

-11-

recognition of that as a fact would not, in any way, have changed the step-two analysis." Tuggerson-Brown v. Commissioner of Social Security, supra.

Of course, "[w]hile the ALJ d[oes] not need to determine whether every alleged impairment [i]s 'severe,' he [i]s required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation." Id. That principle was followed in this case, as the law judge stated that, in determining the plaintiff's residual functional capacity, he "consider[ed] all of the claimant's impairments, including impairments that are not severe" (Tr. 27). Further, the law judge emphasized that limitations associated with the non-severe impairments, "no matter how minimal, are considered throughout the decision" (Tr. 29). See Tuggerson-Brown v. Commissioner of Social Security, supra (citing Wilson v. Apfel, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (statements by the law judge indicating that he considered all the impairments, including those that are non-severe, shows that the law judge considered all necessary evidence)).

Consequently, in order to demonstrate reversible error based upon a mistake regarding the severity of an impairment, the plaintiff must

show that she had functional limitations from that condition that were not included in the law judge's determination of the plaintiff's residual functional capacity. As indicated, the law judge limited the plaintiff to light work (Tr. 29). The plaintiff does not mention, and certainly does not assert, a cogent argument compelling a finding that a specific limitation was omitted from the residual functional capacity due to the finding that her back problem was a non-severe impairment (see Doc. 24, p. 8). See Adefemi v. Ashcroft, supra.

In sum, the plaintiff has failed to show that characterizing her back impairment as a distinct severe impairment would have affected the law judge's determination of her residual functional capacity. Accordingly, this contention is meritless.

B. The plaintiff's next argument is that the law judge failed to give controlling weight to the opinion of her treating physician, Dr. Estampador-Tan (Doc. 24, pp. 8-15). That contention is baseless because the law judge stated good cause for discounting that opinion.

Dr. Estampador-Tan is the plaintiff's treating pain management physician. She first evaluated the plaintiff in March 2007, although the treatment notes in the record begin in December 2008 (Tr. 523, 536).

Dr. Estampador-Tan completed in February 2012 a Physical Residual Functional Capacity Questionnaire in which she opined that, due to chronic intractable pain and low back pain syndrome, the plaintiff could walk only one-third of a city block without rest; sit or stand for only 15 minutes at one time; and sit for a total of 4 hours in a workday, and stand/walk for a total of 2 hours in a workday (Tr. 596-601). Additionally, Dr. Estampador-Tan opined that the plaintiff would need to take unscheduled breaks during the workday every 20 minutes, with each break lasting 30 minutes to an hour, and she anticipated that the plaintiff would be absent from work more than three times monthly (Tr. 599, 601). Dr. Estampador-Tan also opined that the plaintiff's pain was severe enough to interfere often with the plaintiff's attention and concentration (Tr. 598). Dr. Estampador-Tan opined that those limitations existed since 2005 (Tr. 601). Thus, the essence of Dr. Estampador-Tan's opinion is that the plaintiff's impairments were disabling.

Dr. Estampador-Tan identified the clinical findings supporting her opinion as tenderness and diffuse spasms in the plaintiff's back, and trigger points in the lumbar paraspinals and glueteus maximus (Tr. 596). She

added that emotional factors of depression and anxiety "contribute to the severity of the [plaintiff's] symptoms and functional limitations" (Tr. 597).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not according them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge acknowledged that Dr. Estampador-Tan completed a Physical Residual Functional Capacity Questionnaire ("Questionnaire") which opines that the plaintiff was essentially disabled from working (Tr. 34). The law judge gave no weight to Dr. Estampador-Tan's opinion (Tr. 35), explaining (Tr. 34-35) (emphases in original):

> Of import, Dr. Estampador-Tan has many inconsistencies in her own treating records such as her statement that the limitation to less than sedentary has applied since "**2005 by history.**" In Exhibit 18F, Dr. Estampador-Tan reports that she first saw the claimant on March 5, 2007, so medically, she is unaware of the claimant's condition prior to March 5, 2007. Treatment only

continues through November 4, 2009 followed by an absence until January 6, 2010 through April 21, 2010, and not thereafter.  In all of the 19 visits shown in Exhibit Number 18F, Dr. Estampador-Tan records the same diagnoses and the claimant's complaints of pain at level eight.  In contradiction to her opinion put forth in Exhibit 22F, Dr. Estampador-Tan never recommends any surgery as an alternative to less than satisfactory conservative treatment modalities.  Dr. Estampador-Tan does; [sic] however, give the claimant epidural injections despite her repeated reports of "no neurological deficits."   Therefore, the residual functional capacity as opined by Dr. Estampador-Tan of less than sedentary work exertion is unsupported by her own treating records as well as diagnostic findings such as the MRI of December 14, 2006, that identifies no more than **mild** degenerative changes with slight circumferential disc bulges and no disc protrusion, central canal stenosis, or foraminal narrowing.  It is obvious that Dr. Estampador-Tan is relying primarily on the subjective complaints of the claimant regarding the degree of pain and then provides a residual functional capacity **two years after** she last examined the claimant.  Sections 404.1527 of Regulations No. 4 and 416.927 of Regulations No. 16 provide that the medical findings and other evidence must be considered in order to determine if, and to what extent, such opinion is supported thereby. ... A physician's opinion or conclusion is not controlling in the absence of supporting evidence such as physical, clinical/laboratory findings or other medically acceptable evidence.  While an assertion based on symptoms must be evaluated, it cannot receive the weight of one backed by objective physical,

> clinical records. Moreover, Dr. Estampador-Tan offers an opinion on the claimant's mental health issue; yet, she is not qualified as a specialist to offer such an opinion, as she is a pain management doctor. In this case, the opinion is unique, minimally explained, and seemingly contradictory to Dr. Estampador-Tan's own observations of the claimant during all the visits by her patient. As such, the undersigned gives no weight to this opinion. (Exhibit(s) 17F, 18F, and 22F)

The law judge said further (Tr. 35-36):

> Dr. Estampador-Tan repeatedly opines that the claimant does not have any new neurological deficits and despite this, she assesses chronic intractable pain, discogenic disease, low back pain syndrome, and thoracic pain while observations describe an intact gait, no muscle spasms, normal grip, and no sensory or motor loss. Grip and lower extremity strength is 5/5 so there is no need for a hand-held device to aid in ambulation. MRI of the lumbar area of the spine shows no more than mild degenerative changes and no evidence whatsoever of disc protrusion or foraminal/spinal canal stenosis. Thus, the assessment of Dr. Estampador-Tan is questionable and appears that she is being more sympathetic to the claimant rather than objective. Finally, the records of Dr. Estampador-Tan indicate that medications are effective without adverse or intolerable side effects....The claimant is able to cook, provide childcare and/or management of her three children (ages 6, 11, and 15, in 2010) as well as her own personal care, drive, fold clothes, and pet care. Thus, the undersigned concludes that the residual functional capacity [of

> light work] ... is an accurate depiction of the
> claimant's abilities and allows for sustained work
> activity within the parameters as described.

This thorough explanation provides good cause for discounting Dr. Estampador-Tan's opinion in the Questionnaire. See Lewis v. Callahan, supra.

Initially, it is noted that the opinion stated in the Questionnaire is conclusory. Thus, Dr. Estampador-Tan's general diagnoses of low back pain syndrome and chronic intractable pain, with vague clinical signs of "tenderness" "diffuse spasm" and "[t]rigger points" (Tr. 596), do not meaningfully explain Dr. Estampador-Tan's extreme opinion of debilitating functional limitations. See, e.g., Longworth v. Commissioner of the Social Security Administration, 402 F.3d 591, 596 (6th Cir. 2005) (physician needs to translate how abnormal clinical findings affect functioning). Such an explanation is critical in this case where there is little objective and clinical evidence of significant back abnormalities. In sum, the conclusory nature of Dr. Estampador-Tan's opinion alone provides a recognized basis for discounting the Questionnaire. Lewis v. Callahan, supra; Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987); Lanier v. Commissioner of Social

Security, 252 Fed. Appx. 311, 313 (11th Cir. 2007); see, e.g., Brown v. Commissioner of Social Security, 442 Fed. Appx. 507, 512 (11th Cir. 2011) (law judge provided good cause to reject the treating physician's opinions stated in forms that did not reference his treatment records or adequately explain his opinions).

Furthermore, there is substantial evidence supporting the law judge's reasoning that Dr. Estampador-Tan's treatment records were inconsistent with her opinion of debilitating functional limitations. See Barclay v. Commissioner of Social Security Administration, 274 Fed. Appx. 738, 740 (11th Cir. 2008) (lack of supporting medical records may be considered in rejecting the treating physician's opinion). Thus, as the law judge recounted (Tr. 31), Dr. Estampador-Tan observed during the plaintiff's initial assessment that the plaintiff had normal muscle tone, her sensory system was intact, the plaintiff's muscle test was 5/5 in the upper and lower extremities, she had normal deep tendon reflexes, and the straight leg raising test was negative (Tr. 523). Also, none of Dr. Estampador-Tan's treatment notes following that initial assessment reflects disabling findings. Thus, the treatment notes consistently state "[t]here are no new neurological deficits"

-19-

(see, e.g., Tr. 460-64, 524-35) and, in terms of clinical findings, the treatment notes state in a vague and rote fashion that "[a]reas shaded by patient are tender with diffuse moderate spasm" (see, e.g., Tr. 460-64). Almost all notes also state that "[s]he reports being more active" (see, e.g., Tr. 460).

Additionally, as the law judge said (Tr. 32), the treatment notes do not indicate that Dr. Estampador-Tan (or any treating source, for that matter) placed any long-term restrictions on the plaintiff's functioning (see, e.g., Tr. 460-64, 523). See Longworth v. Commissioner of the Social Security Administration, supra, 402 F.3d at 596 (a lack of physical restrictions constitutes substantial evidence for a finding of non-disability); Vesy v. Astrue, 353 Fed. Appx. 219, 223 (11th Cir. 2009) (rejecting treating physician's opinion when his treatment notes did not suggest the claimant was as limited as he opined later). Further, Dr. Estampador-Tan's records regularly state that the medications are effective (Tr. 36; see, e.g., Tr. 460-64), which is inconsistent with the opinion that the back impairments are debilitating. Moreover, as the law judge indicated, Dr. Estampador-Tan did not identify any medical basis for opining that the plaintiff's limitations

-20-

existed since 2005 (which critically was within the insured period), and Dr. Estampador-Tan did not evaluate the plaintiff until 2007.

Substantial evidence also supports the law judge's conclusion that Dr. Estampador-Tan's opinion of extreme limitation are not supported by the objective evidence and other medical evidence of record (Tr. 34-36). See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) (treating physician's report "may be discounted when it is not accompanied by objective medical evidence"); Reynolds-Buckley v. Commissioner of Social Security, 457 Fed. Appx. 862, 864 (11th Cir. 2012) (good cause to afford less weight to a treating physician's opinion when the evidence supported a contrary finding). Thus, as the law judge noted, the MRI of the plaintiff's lumbar back showed only "mild" degenerative changes, "slight" circumferential bulges, and no disc protrusion, central canal stenosis, or neural foraminal narrowing (Tr. 520).

In addition, examinations of the plaintiff's musculoskeletal and neurological systems by other physicians were consistently within normal limits. For example, the plaintiff's treating physician, Dr. Jose Cardenas, observed in January 2010 that the plaintiff's grip and lower extremity strength

was 5/5; her sensory system was intact; there was no motor loss, gait disturbance, atrophy, or spasticity; and there was no need for an assistive device to ambulate independently (Tr. 434). Similarly, in December 2011, the plaintiff's neurological and sensory systems were grossly intact, the plaintiff was oriented x3, she demonstrated a normal gait, full normal range of motion, and full strength (5/5) in all extremities (Tr. 547).

Moreover, the law judge reasonably noted that Dr. Estampador-Tan's opinion that the plaintiff's mental health issues contribute to her functional limitations is clearly outside Dr. Estampador-Tan's expertise and unsupported by the record (Tr. 35). For example, the contention that the plaintiff's concentration would be often interfered with due to pain is undermined by consultative psychologist Dr. Christopher Jean's observation during the consultative evaluation that the plaintiff's "[a]ttention and concentration were within normal limits" and that the plaintiff attended to his questions "throughout the interview without distraction" (Tr. 436). In fact, the disconnect between the medical evidence and Dr. Estampador-Tan's opined extreme functional limitations is so pronounced that the law judge concluded (reasonably enough) that Dr. Estampador-Tan's opinion was

influenced by sympathy for the plaintiff (Tr. 36). That conclusion is supported by the doctor's opinion that, even though he first saw the plaintiff in 2007, her debilitating condition reached back to 2005 when the plaintiff was last insured for disability benefits.

The plaintiff argues that the law judge's explanation for rejecting Dr. Estampador-Tan's opinion is flawed. First, the plaintiff argues that the law judge erred in stating that Dr. Estampador-Tan completed the Questionnaire two years after she last examined the plaintiff (Doc. 24, p. 15; see Tr. 34). The plaintiff submitted to the Appeals Council treatment notes showing that Dr. Estampador-Tan treated the plaintiff as recently as January 2012, just weeks before she filled out the Questionnaire. However, that evidence was not before the law judge.  Thus, the plaintiff, without explanation for the delay, first submitted Dr. Estampador-Tan's treatment notes from May 2010 to January 2012 to the Appeals Council (see Tr. 7). Consequently, the law judge did not err in stating based upon the evidence before him that the plaintiff had not been seen by Dr. Estampador-Tan for two years prior to her filling out the questionnaire.

Furthermore, this circumstance does not undermine the law judge's explanation for rejecting Dr. Estampador-Tan's opinion because, as discussed supra, pp. 18-22, the law judge gave several reasons for that determination, each of which justify the rejection of Dr. Estampador-Tan's opinion.

Next, the plaintiff baselessly argues that the law judge improperly criticized Dr. Estampador-Tan's opinion that the plaintiff's disabling limitations existed since 2005 "by history" (Doc. 24, p. 15). The law judge's point was that Dr. Estampador-Tan was "medically ... unaware of the claimant's condition prior to March 5, 2007," when she first examined the plaintiff (Tr. 34). This is a reasonable conclusion based on the record, and that circumstance clearly undermines the probative value of Dr. Estampador-Tan's opinion.

The plaintiff argues that Dr. Estampador-Tan indicated that the "reported medical history would tend to support the assessed limitations back to 2005" (Doc. 24, p. 15). This contention is baseless because Dr. Estampador-Tan made no such statement. As indicated, all Dr. Estampador-Tan states is that she formed that opinion "by history" (Tr. 601), and that

general term could simply refer to the plaintiff's subjective report of her medical condition.   Notably, the record does not contain any medical evidence of debilitating limitations from a back impairment upon which Dr. Estampador-Tan could have based such an opinion.

Furthermore, the law judge concluded that "[i]t is obvious that Dr. Estampador-Tan is relying primarily on the subjective complaints of the claimant regarding the degree of pain" (Tr. 34).  This conclusion is supported by the notation of "by history," as well as the recording of pain levels from very strong to excruciating despite modest objective findings.  Significantly, the law judge found that the plaintiff's subjective complaints "are not credible to the extent alleged" (Tr. 33; see also Tr. 34 ("the claimant is over exaggerating her symptoms and limitations")).  The plaintiff has not properly and meaningfully challenged that credibility finding.

The plaintiff also argues that the law judge improperly considered in discounting Dr. Estampador-Tan's opinion that there was no recommendation of surgery (Doc. 24, p. 15).  In this regard, the plaintiff argues that "a recommendation of surgery is not required in order for an

-25-

opinion to be valid" and that "surgery was not recommended because it would not cure and/or alleviate Plaintiff's condition" (id.).

However, a law judge may consider that no surgery was recommended in determining the severity of a condition. See 20 C.F.R. 404.1529(c)(3), 416.929(c)(3). Here, the law judge reasonably thought that, if the plaintiff's pain were as bad as she said, then Dr. Estampador-Tan's treatment was inadequate and other modalities of treatment, such as surgery, would have been considered.

The plaintiff argues next that the law judge failed to consider Dr. Estampador-Tan's lengthy treatment relationship with the plaintiff, and her specialization in pain management (Doc. 24, p. 16). See 20 C.F.R. 404.1527(c), 416.927(c) (listing several factors to consider in determining weight to be given a medical opinion). This contention is frivolous.

Initially, it is noted that the law judge "is not required to explicitly address each of [the §404.1527] factors" in the decision. Lawton v. Commissioner of Social Security, 431 Fed. Appx. 830, 833 (11th Cir. 2011). Regardless, the law judge's lengthy discussion of Dr. Estampador-Tan's treatment of the plaintiff makes clear that the law judge was aware of, and

considered, that Dr. Estampador-Tan had a long-standing relationship with the plaintiff (Tr. 31, 32, 34). Additionally, the law judge considered Dr. Estampador-Tan's specialization as a pain management physician, as he specified in the decision that Dr. Estampador-Tan "is a pain management doctor" (Tr. 35).

Finally, the plaintiff argues that, even if Dr. Estampador-Tan's opinion were not entitled to controlling weight, it does not mean the opinion is entitled to no weight (Doc. 24, p. 16). However, the plaintiff does not mention, and she certainly does not present, a cogent argument that the law judge was compelled to accept a particular limitation opined by Dr. Estampador-Tan. See Adefemi v. Ashcroft, supra.

In sum, substantial evidence clearly supports the law judge's determination that Dr. Estampador-Tan's extreme opined limitations are inconsistent with her treatment notes and the overall record. Therefore, the law judge reasonably declined to give controlling weight to her opinion. See Lewis v. Callahan, supra.

It is also noted that the plaintiff injected into this argument the distinct contention that the Appeals Council erred by not remanding the

matter to the law judge for consideration of Dr. Estampador-Tan's treatment records for the time period May 2010 to January 2012 (Doc. 24, pp. 11-13). The plaintiff neither identified this argument as a basis for error (id., p. 2), nor properly developed this contention, in violation of the Scheduling Order and Memorandum Requirements (Doc. 16, p. 2).

Thus, the Scheduling Order clearly states that "[a]rguments within a properly articulated issue must relate directly to the particularized issues and shall not include unrelated contentions, observations, or comments" (id.). Further, the Scheduling Order advised the plaintiff that "discrete challenges must be supported by citations to the record of the pertinent facts and by citations of the governing legal standards" (id.). Notably, in Thompson v. Colvin, 8:12-CV-2457-T-TGW (Doc. 22, pp. 7-8), I explained to counsel from the law firm that represents the plaintiff in this case the importance of following these requirements.

Here, the requirements were not satisfied. Thus, the plaintiff did not distinctly articulate an issue concerning an error by the Appeals Council (see Doc. 24, p. 2). Furthermore, although the plaintiff referred to law governing the Appeals Council's review (id., pp. 11-14), the plaintiff does

not apply that law to her case.  Specifically, the plaintiff makes no attempt to show how Dr. Estampador-Tan's additional treatment notes, which were essentially duplicative of her prior treatment notes, were new (that is, non-cumulative), material and rendered the law judge's determination contrary to the weight of all the evidence.  See Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253, 1261 (11th Cir. 2007); Burgin v. Commissioner of Social Security, 420 Fed. Appx. 901, 903 (11th Cir. 2011). Accordingly, that contention, which is meritless, is forfeited in accordance with the Scheduling Order (Doc. 16, p. 2).

The plaintiff also sandwiched in this argument the unrelated assertion that the law judge's credibility assessment "is suspect" (Doc. 24, p. 15).  To the extent that the plaintiff was attempting to challenge the law judge's credibility determination, that contention is also forfeited for failure to comply with the Scheduling Order (Doc. 16).

C.   The plaintiff's final contention is "[t]he ALJ based his findings on opinions that did not consider the entire record" (Doc. 24, p. 16). Specifically, the plaintiff argues that the law judge improperly relied upon the opinions of non-examining reviewing physician Dr. P. S. Kristhnamurthy and

psychologist Dr. Richard K. Lyon. These opinions were given more than one year prior to the law judge's decision and, therefore, before the record was complete.

Dr. Krishnamurthy, in an opinion dated May 22, 2010, opined that the plaintiff could perform light exertional work (Tr. 465-72). Dr. Lyon opined in a Psychiatric Review Technique form dated August 3, 2010, that the plaintiff did not have a severe mental impairment (Tr. 473). The law judge found that the opinions of Dr. Krishnamurthy and Dr. Lyon were "persuasive" (Tr. 35). See 20 C.F.R. 404.1527(e)(2), 416.927(e)(2) (state agency consultants are experts in Social Security disability evaluation and the adjudicator must consider their opinions).

The plaintiff essentially argues that those opinions are stale because the doctors did not have the opportunity to review Dr. Estampador-Tan's treatment notes for the time period May 2010 to January 2012 (Doc. 24, pp. 16-17). However, Dr. Lyon opined on the plaintiff's mental functional capacity. Not only is the plaintiff's mental residual functional capacity unchallenged, the plaintiff does not explain how Dr. Estampador-Tan's treatment notes regarding the plaintiff's back impairment would affect Dr.

Lyon's evaluation of the plaintiff's mental state. Therefore, the assertion that Dr. Lyon's opinion lacks probative value because he did not consider those treatment notes is baseless.

Furthermore, the plaintiff does not identify any medical evidence in those treatment records that undermines Dr. Krishnamurthy's opinion. See Poellnitz v. Astrue, 349 Fed. Appx. 500, 503 (11th Cir. 2009). Rather, as the Commissioner points out, Dr. Estampador-Tan's treatment notes from May 2010 to January 2012 contain more of the same; thus, Dr. Estampador-Tan merely repeats her previous findings that "[t]here are no new neurological deficits" and the medication is effective, and she states, apparently in lieu of physical examinations, that the "[a]reas shaded by patient are tender with diffuse moderate spasm" (compare, e.g., Tr. 607-19 with Tr. 460-64).

Notably, in opining that the plaintiff could perform light work, Dr. Krishnamurthy considered Dr. Estampador-Tan's diagnoses of low back syndrome and chronic intractable pain (Tr. 466). However, Dr. Krishnamurthy opined that a medically determinable impairment was not established, and the severity of the symptoms was unsupported, based on the clinical findings and objective mild MRI findings (Tr. 466-67, 470). The

more recent treatment notes from Dr. Estampador-Tan do not undermine that conclusion.

Significantly, a physical examination of the plaintiff in December 2011 further supports Dr. Krishnamurthy's opinion, as it shows that the plaintiff had a full range of motion, full strength (5/5), a normal gait, and normal neurological and sensory systems (see Tr. 547, 551). In sum, the plaintiff has not shown that Dr. Krishnamurthy's opinion is unreliable because she did not review Dr. Estampador-Tan's treatment notes from May 2010 to January 2012.

Finally, it is noted that the premise of this argument is mistaken because the law judge did not rely solely on Dr. Krishnamurthy's opinion in determining that the plaintiff is not disabled. Thus, the law judge emphasized that "the severity of the claimant's allegations of pain and limitation is not supported by the objective laboratory and/or diagnostic findings of record" (Tr. 30), and the law judge details those benign findings in the decision (Tr. 30-31, 34). Further, the law judge considered that none of the treatment notes document serious impairment to work activities, and that the plaintiff's daily activities were inconsistent with disabling functional limitations (Tr. 31, 32, 33, 34, 36). Therefore, for all of these reasons, this argument is meritless.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this _16th_ day of September, 2014.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE